UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § <br> § Chapter 11 <br> § |
| MINERVA RESOURCES, LLC; <br> CRONUS MINERAL HOLDINGS, LLC, | § Case No. 22-32291 <br> § <br> § (Joint Administration Pending) |
| Debtors.[1] | § |

**DECLARATION OF DREW MCMANIGLE IN SUPPORT
OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

I, Drew McManigle, being duly sworn, depose and say:

1. I am a Managing Director of MACCO Restructuring Group, LLC. I was appointed as the Chief Restructuring Officer ("CRO") of Minerva Resources LLC ("Minerva") and Cronus Mineral Holdings, LLC ("Cronus" and, collectively with Minerva, the "Debtors"). I am over the age of 18, competent to testify, and authorized to submit this declaration (the "Declaration") on behalf of the Debtors.

2. I have served as the CRO of the Debtors since August 8, 2022. Additionally, MACCO has served as the Debtors' financial advisor since July 22, 2022. In my role as CRO, I have the sole authority to act on behalf of the Debtors in connection with this chapter 11 case (the "Chapter 11 Case") and any proposed sale of assets or restructuring. I am generally familiar with the Debtors' assets, liabilities and operations.

3. Except as otherwise noted, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' senior management, my review of relevant documents or, based on my experience and knowledge of the Debtors' operations and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Minerva Resources, LLC (4164), and Cronus Mineral Holdings, LLC (3039).

1

13503817.v2

financial conditions, and my opinion. In making this Declaration, I have relied, in part, on information and materials that the Debtors' personnel and advisors have gathered, prepared, verified, and provided to me in each case under my ultimate supervision, at my direction and/or for my benefit in preparing this Declaration. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

4. To resolve immediate issues that may cause irreparable harm if not promptly addressed, the Debtors intend to request various types of relief in "first day" applications and motions (collectively, the "First Day Pleadings") in connection with this Chapter 11 Case.[2] I submit this declaration in support of the Debtor's (a) voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and (b) the First Day Pleadings. I am generally familiar with the Debtors' operations, business and financial affairs, and the circumstances leading up to these Chapter 11 Cases.

5. This Declaration is divided into two parts. Part I provides background information about the Debtor, its business operations, corporate and capital structures, and the circumstances surrounding the commencement of the Chapter 11 Case. Part II discusses the First Day Pleadings.

## PART I – BACKGROUND

### A. Overview

6. On August 10, 2022 (the "Petition Date"), the Debtors filed these Chapter 11 Cases. The purpose of these Chapter 11 Cases is to facilitate a sale of substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code and confirm a plan of liquidation to distribute the sales proceeds.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Pleadings.

### B. The Debtors' Formation and Structure

7. Minerva was formed effective as of January 1, 2021, for the purpose of owning non-operated working interests in various oil and gas assets. The owners of several non-operated assets contributed those assets to the newly formed Minerva to create a shared pool of assets. As agreed by the members, the allocation of equity interests in Minerva was based on the original cost basis of the assets each member contributed.

8. At the time of Minerva's formation, some wells had not yet been completed or were in the early stages of production. As such, each member made the decision that they were better off sharing the risk of asset performance across many wells—via diversification—than retaining their interests in only a few wells. This diversification is particularly important for small percentage, non-operated working interests, because the contributors had little ability to influence the operator. As such, Minerva helped the parties manage the risk that their wells would underperform. Further, the parties believed that the consolidation of non-operated assets in a new entity might enable the wells to collectively secure a line of credit (that could not be secured with just a few assets), which line of credit would be used to acquire additional non-operated interests. While the line of credit was never secured by Minerva, the consolidation of assets did allow the members to grow the value of Minerva organically, through a series of sales and purchase transactions, which benefited all of its owners.

9. At the time of its formation, the original members of Minerva were: (i) Minerva Resources Management, LLC, (ii) Strategic Energy Assets – V, LLC, (iii) Strategic Energy Assets – VII, LLC, (iv) SEA VIII Master Fund, LLC, (v) Resolute Capital Partners, LLC ("RCP"), (vi) HomeBound Resources, LLC ("Homebound"), and (vii) PetroRock Mineral Holdings, LLC ("PetroRock").

10. Cronus was formed for the purpose of holding certain overriding royalty interests in oil and gas properties. Cronus is also one of the owners of the company that manages Minerva.

11. In June 2021, a dispute arose between RCP and HomeBound, LLC regarding the management of PetroRock. HomeBound, LLC resigned as the manager of PetroRock after refusing to make certain interest payments due to PetroRock's lenders. RCP then became the manager of PetroRock and sold PetroRock's units in Minerva back to Minerva for cash. On information and belief, this cash was used to make the interest payments to PetroRock's lenders that was due at the end of June 2021 and to payoff other notes. Following this transaction with PetroRock, Minerva agreed to buy back the units owned by RCP and HomeBound.

12. After these transactions, as of June 24, 2021 the ownership structure of Minerva was as follows:

**SCHEDULE 1**

**SCHEDULE OF MEMBERS**

| Name and Address | Class A Common Units (and Proportional Share Thereof) | Class B Units (and Proportional Share Thereof) | Voting Units (and Proportional Share Thereof) |
|---|---|---|---|
| Minerva Resources Management, LLC<br>6321 Campus Circle East<br>Irving, TX 75063 | | 2,000<br>(100%) | 100<br>(100%) |
| Strategic Energy Assets - V, LLC | 374<br>(4.67%) | | |
| Strategic Energy Assets - VII, LLC | 4,049<br>(50.61%) | | |
| SEA VIII Master Fund, LLC | 3,577<br>(44.72%) | | |

C. **The Debtors' Management**

13. The Debtors do not have any employees. Minerva is managed by Minerva Resources Management, LLC pursuant to the terms of the Minerva Resources, LLC Agreement. Minerva Resources Management, LLC is owned by Cronus and Fox-IP, LLC. Pursuant to the original terms of the Minerva Resources, LLC Agreement, Minerva would have currently been

obligated to pay a management fee of $25,000 each month to Minerva Resources Management, LLC. Following the divestiture by PetroRock, RCP, and HomeBound of Minerva equity, the management fee was renegotiated and currently Minerva pays a monthly management fee of $50,000 to Minerva Resources Management, LLC. Additionally, Minerva Resources Management, LLC received certain overriding royalty interests. The current terms of the management agreement between Minerva and Minerva Resources Management, LLC are as follows:

"Management Fee" means:

(a) the sum of: (i) (A) $50,000 per month from January 1, 2021 to June 30, 2021, (B) $200,000 per month from July 1, 2021 to June 30, 2022, and (C) $50,000 per month thereafter *plus* (ii) two percent (2%) of the proceeds from the sale of any assets owned by the Company during such month *plus* (iii) two percent (2%) of the consideration paid by the Company for the acquisition of assets during such month *plus* (iv) two percent (2%) of joint interest billings for assets owned by the Company during such month; and

(b) an overriding royalty interest in and to each well and lease acquired directly or indirectly by Company equal to the *lesser of*: (i) two percentage points (2%) (proportionately reduced) and (ii) the positive difference (if any) between twenty-five percent (25%) and existing burdens of record (proportionately reduced) (for example, if the Net Revenue Interest in a well was eighty percent (80%), Manager would receive an overriding royalty interest equal to two percentage points (2%), and if the Net Revenue Interest in a well as seventy six percent (76%), Manager would receive an overriding royalty interest equal to one percentage point (1%)).

### D. Litigation Leading to the Filing of the Chapter 11 Cases

14. On or about September 24, 2021, the Securities and Exchange Commission filed an administrative proceeding alleging that RCP and HomeBound, and their respective principals, fraudulently raised over $200 million from investors in connection with certain debt funds associated with PetroRock.

15. On May 3, 2022, PetroRock filed a lawsuit against, amongst others, Minerva and Cronus, Cause No. DC-22-04656, in the 101st Judicial District Court of Dallas County, Texas (the "State Court Lawsuit"), seeking a court-supervised liquidation and wind-up of PetroRock.

16. On May 24, 2022, various investors in the PetroRock debt funds intervened in the State Court Lawsuit, alleging, inter alia, that certain of PetroRock's assets were fraudulently transferred to Minerva and Cronus, among others.

17. On June 14, 2022, the intervenors filed an emergency application for a Temporary Restraining Order against Cronus and Minerva, among others, seeking to freeze bank accounts and enjoin transfers among various defendants. The Court heard argument on the application on June 16 and entered an order on or about that day, granting intervenors relief. As a result of the entry of the Temporary Restraining Order and at the request of PetroRock's counsel, various oil and gas operators ceased paying Minerva royalties.

18. In lieu of a hearing on PetroRock's motion for the appointment of a wind-up agent and on Intervenor's application for a Temporary Injunction, the parties entered into a Rule 11 agreement regarding various outstanding issues. The court accepted the parties' agreements as it related to the Temporary Injunction, but appointed its own wind-up agent in place of the agent requested by PetroRock.

19. On June 27, 2022, various equity investors in certain equity funds that previously invested in Minerva intervened in PetroRock's lawsuit, alleging fraudulent transfer against Minerva and Cronus and various securities claims against other defendants.

### E. Retention of Restructuring Professionals

20. On June 23, 2022, the Debtors retained Porter Hedges LLP as their restructuring counsel.

21. On July 22, 2022, the Debtors retained MACCO as their financial advisor.

22. On August 8, 2022, the Debtors retained me as their Chief Restructuring Officer.

23. On August 8, 2022, the Debtors retained EnergyNet.com, LLC ("EnergyNet") to preform sales brokerage and consulting services for the disposition of their assets.

24. The purpose of these chapter 11 cases is to conduct an open and transparent, court-supervised marketing and sales process under Section 363 of the Bankruptcy Code. This sales process will maximize the value of the Debtors' assets without being hindered by the State Court Lawsuit and the inability to generate revenue during the process. Following the sale of the Debtors' assets, the Debtors intend to liquidate the claims in the State Court Lawsuit and confirm a plan of liquidation which will bring finality to the Debtors and the claims against them in the State Court Lawsuit.

## PART II – FIRST DAY MOTIONS[3]

25. Contemporaneously herewith, the Debtors have filed a number of First Day Motions seeking orders granting various forms of relief intended to stabilize the Debtors' business operations, facilitate the efficient administration of the Chapter 11 Case, and expedite a swift and smooth restructuring of the Debtors' balance sheet, including:

- **Cash Management Motion:** Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Operating its Cash Management System and Honor Certain Prepetition Obligations, and (B) Maintain Existing Bank Accounts and Business Forms, and (II) Granting Related Relief.

- **JIB Motion:** Debtors' Emergency Motion for Interim and Final Orders Authorizing (I) Payment of Joint Interest Billings and (II) Financial Institutions to Receive, Process, Honor, and Pay All Checks Presented for Payment and to Honor all Funds Transfer Requests Related to Such Obligations.

26. I am familiar with the content and substance of the First Day Motions. I have consulted with Debtors' counsel regarding and understand each of the First Day Motions and the relief requested therein. To the best of my knowledge and belief, the factual statements contained

---

[3] Capitalized terms not otherwise defined in this section have the meanings ascribed to them in the applicable motion.

in each of the First Day Motions are true and accurate and each such factual statement is incorporated herein by reference.

27. I believe that the relief requested in the First Day Motions is necessary, in the best interests of the Debtors' estates, creditors, and all other parties in interest, and will allow the Debtors to operate with minimal disruption and maximum value preservation during the pendency of the Chapter 11 Cases. Failure to grant the relief requested in any of the First Day Motions may result in immediate and irreparable harm to the Debtors, the business, and the estates. Accordingly, for the reasons set forth herein and in each respective First Day Motion, the Court should grant the relief requested in each of the First Day Motions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: August 10, 2022.
Houston, Texas

By: */s/ Drew McManigle*
Name: Drew McManigle
Title: Chief Restructuring Officer

13503817.v2