**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| **In re:** | § |
|  | § **Chapter 11** |
|  | § |
| **MINERVA RESOURCES, LLC;** | § **Case No. 22-32291** |
| **CRONUS MINERAL HOLDINGS, LLC,** | § |
|  | § **(Jointly Administered)** |
| Debtors.[1] | § |

**COMBINED DISCLOSURE STATEMENT AND JOINT PLAN OF LIQUIDATION OF
MINERVA RESOURCES, LLC AND CRONUS MINERAL HOLDINGS, LLC UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX 24038592)
Aaron J. Power (TX 24058058)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:(713) 226-6600
Facsimile: (713) 226-6628
Email:     jwolfshohl@porterhedges.com
           apower@porterhedges.com

*Counsel to the Debtors and Debtors in
Possession*

Dated: June 16, 2023

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Minerva Resources, LLC (4164), and Cronus Mineral Holdings, LLC (3039).

THIS SOLICITATION OF VOTES (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN SUFFICIENT ACCEPTANCES OF THE PLAN (AS DEFINED HEREIN) UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE"). THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. FOLLOWING THE SOLICITATION OF VOTES, THE DEBTORS EXPECT TO PROMPTLY SEEK AN ORDER CONFIRMING THE PLAN.

> THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS AUGUST 14, 2023, UNLESS EXTENDED BY THE DEBTORS (AS DEFINED HEREIN). THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS OR INTERESTS MAY VOTE ON THE PLAN IS JULY 7, 2023 (THE "VOTING RECORD DATE").

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE VOTING ON THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES. WHILE THE DEBTORS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES AND THEIR FUTURE RESULTS AND OPERATIONS. THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD LOOKING STATEMENTS CONTAINED HEREIN.

**TABLE OF CONTENTS**

Page

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
OF TIME AND GOVERNING LAW ................................................................. 3

    A.    Defined Terms ................................................................................ 3
    B.    Rules of Interpretation ................................................................. 10
    C.    Computation of Time .................................................................... 11
    D.    Governing Law ............................................................................. 11
    E.    Reference to Monetary Figures .................................................... 12
    F.    Controlling Document .................................................................. 12

ARTICLE II. BACKGROUND ........................................................................ 12

    A.    Overview of the Debtors' Operations Prior to the Petition Date ..... 12
    B.    Events Leading to the Commencement of the Chapter 11 Cases ..... 13
    C.    Material Events During the Chapter 11 Cases ............................... 13

ARTICLE III. Tax CONSEQUENCES .............................................................. 15

    A.    Introduction. ................................................................................. 15
    B.    Tax Consequences to the Debtor and Equity Interest Holders. ...... 15
    C.    Tax Consequences to Claimants. .................................................. 16
    D.    Information Reporting and Backup Withholding. ......................... 17
    E.    Importance of Obtaining Professional Assistance. ....................... 17

ARTICLE IV. CERTAIN RISK FACTORS TO BE CONSIDERED ...................... 17

    A.    Certain Bankruptcy Law Considerations ..................................... 17
    B.    The Debtors could withdraw the Plan .......................................... 18
    C.    The Debtors have no duty to update ............................................. 18
    D.    No representations outside this disclosure statement are authorized ........ 19
    E.    No legal or tax advice is provided by this disclosure statement ........ 19
    F.    No admission made ...................................................................... 19

ARTICLE V. VOTING PROCEDURES AND REQUIREMENTS ......................... 19

    A.    Parties Entitled To Vote ............................................................... 19
    B.    Voting Deadline ........................................................................... 20

By first class mail, overnight courier or hand delivery to: ............................. 21

    C.    Voting Procedures ........................................................................ 21
    D.    Waivers of Defects, Irregularities, etc. ........................................ 22

ARTICLE VI. Confirmation of the Plan ......................................................... 22

    A.    Confirmation Hearing .................................................................. 22
    B.    Requirements for Confirmation of the Plan ................................. 22

i

ARTICLE VII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
      THE PLAN ........................................................................................... 25

    A.    Alternative Plan ........................................................................ 25
    B.    Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law ................. 26

ARTICLE VIII. ADMINISTRATIVE CLAIMS and PRIORITY CLAIMS .............................. 26

    A.    Administrative Claims ................................................................ 26
    B.    Professional Compensation.......................................................... 27
    C.    Statutory Fees.......................................................................... 27

ARTICLE IX. CLASSIFICATION AND TREATMENT OF CLAIMS AND
      INTERESTS ......................................................................................... 28

    A.    Introduction............................................................................. 28
    B.    Summary of Classification........................................................... 28
    C.    Treatment of Claims and Interests ................................................. 28
    D.    Provision Governing Unimpaired Claims......................................... 29

ARTICLE X. ACCEPTANCE REQUIREMENTS........................................................... 29

    A.    Acceptance or Rejection of this Plan ............................................. 29
    B.    Confirmation of This Plan Pursuant to Section 1129(b) of the
        Bankruptcy Code ..................................................................... 30
    C.    Controversy Concerning Impairment ............................................. 30

ARTICLE XI. MEANS FOR IMPLEMENTATION OF THE PLAN .................................... 30

    A.    Deemed Consolidation................................................................ 30
    B.    Compromise of Investor Claims .................................................... 31
    C.    Disallowance of Duplicate Claims.................................................. 31
    D.    Disallowance of Claims Waived in Class Action Settlement.................... 31
    E.    Claims Stipulations and Agreement with the PM Settlement Trust ................. 31
    F.    Claims Stipulation and Agreement with the Representative Plaintiffs in
        the State Court Lawsuit.............................................................. 32
    G.    Motion to Subordinate and Objection to Claim No. 21 Filed Against
        Minerva ................................................................................ 32
    H.    Transactions Effective as of the Effective Date.................................. 32
    I.    Vesting of Estate Property in the Liquidating Debtor ......................... 32
    J.    Plan Agent.............................................................................. 32
    K.    Continuation of Limited Operations .............................................. 33
    L.    Post-Confirmation Sale of Assets .................................................. 33
    M.    Plan Agent's Retention of the Debtors' Management Team and
        Management Incentive Plan........................................................ 33
    N.    Powers of the Plan Agent ............................................................ 34
    O.    Resignation/Removal of the Plan Agent and Appointment of Successor.......... 35
    P.    Compensation Procedures........................................................... 36
    Q.    Payment of Taxes..................................................................... 36
    R.    Authority to Pursue, Settle, or Abandon Retained Causes of Action ............... 36

S.     Filing of Monthly and Quarterly Reports ........................................................ 37
T.     Books and Records ...................................................................................... 37
U.     Corporate Authorization .............................................................................. 37
V.     Effectuating Documents and Further Transactions........................................ 37
W.     Exemption from Certain Taxes and Fees....................................................... 38

ARTICLE XII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                 LEASES ................................................................................................ 38

A.     Treatment of Executory Contracts and Unexpired Leases ............................... 38
B.     Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases ....................................................................................... 38
C.     Rejection Damages Claim............................................................................ 38
D.     Reservation of Rights.................................................................................. 39

ARTICLE XIII. PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 39

A.     Timing and Calculation of Amounts to Be Distributed; Entitlement to
        Distributions.............................................................................................. 39
B.     Plan Agent to make Distributions ................................................................. 40
C.     No De Minimis Distributions Required .......................................................... 40
D.     Distributions on Account of Claims Allowed After the Effective Date ............ 40
E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 40
F.     Compliance with Tax Requirements/Allocations ............................................ 41
G.     Claims Paid or Payable by Third Parties ...................................................... 42
H.     Claims Already Satisfied ............................................................................. 42
I.     Allocation of Plan Distributions between Principal and Interest...................... 43
J.     No Postpetition Interest on Claims ............................................................... 43

ARTICLE XIV. PROCEDURES FOR RESOLVING CONTINGENT,
                 UNLIQUIDATED, AND DISPUTED CLAIMS ............................................. 43

A.     Allowance and Disallowance of Claims ....................................................... 43
B.     Prosecution of Objections to Claims............................................................ 43
C.     Deadline to Object to Claims...................................................................... 44
D.     Estimation of Claims.................................................................................. 44
E.     Amendments to Claims............................................................................... 44
F.     Distributions After Allowance .................................................................... 44

ARTICLE XV. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
               AND THE EFFECTIVE DATE ................................................................... 45

A.     Conditions Precedent to Confirmation.......................................................... 45
B.     Conditions Precedent to the Effective Date ................................................... 45
C.     Waiver of Conditions................................................................................. 46
D.     Effect of Nonoccurrence of Conditions ....................................................... 46

ARTICLE XVI. SETTLEMENT, RELEASE, INJUNCTION AND RELATED
       PROVISIONS ........................................................................................ 46

    A.   Compromise and Settlement of Claims, Interests, and Controversies .............. 46
    B.   Non-Discharge of Debtors; Injunction ............................................................. 46
    C.   Releases by the Debtors ................................................................................... 47
    D.   Releases by Holders of Claims ........................................................................ 47
    E.   Exculpation ..................................................................................................... 48
    F.   Injunction ....................................................................................................... 49
    G.   Term of Injunctions or Stays ........................................................................... 50
    H.   Setoffs ............................................................................................................ 50
    I.   Recoupment .................................................................................................... 50

ARTICLE XVII. BINDING NATURE OF PLAN ................................................................ 50

ARTICLE XVIII. RETENTION OF JURISDICTION ......................................................... 51

ARTICLE XIX. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE
       PLAN .................................................................................................... 53

    A.   Modifications and Amendments ....................................................................... 53
    B.   Effect of Confirmation on Modifications ......................................................... 53
    C.   Revocation or Withdrawal of the Plan ............................................................. 53
    D.   Substantial Consummation of the Plan ............................................................ 53

ARTICLE XX. MISCELLANEOUS PROVISIONS ............................................................ 54

    A.   Successors and Assigns .................................................................................... 54
    B.   Reservation of Rights ...................................................................................... 54
    C.   Service of Documents ...................................................................................... 54
    D.   Nonseverability of Plan Provisions .................................................................. 54
    E.   Return of Security Deposits ............................................................................. 55
    F.   Entire Agreement ............................................................................................ 55
    G.   Exhibits .......................................................................................................... 55
    H.   Votes Solicited in Good Faith ......................................................................... 55
    I.   Filing of Additional Documents ...................................................................... 55

## INTRODUCTION

Minerva Resources, LLC ("Minerva") and Cronus Mineral Holdings, LLC ("Cronus" and with Minerva, the "Debtors") respectfully propose the following disclosure statement and plan of liquidation under Chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I hereof.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

Following the Effective Date, the Debtors will become the Liquidating Debtors, and the Liquidating Debtors will be managed by Drew McManigle, the current Chief Restructuring Officer of the Debtors, as the Plan Agent.  The Plan Agent will be responsible for taking the necessary and appropriate actions to liquidate the remaining assets of the Debtors' Estates, make distributions to holders of Allowed Claims, and to proceed with an orderly, expeditious, and efficient wind-down of the Debtors' Estates in accordance with the terms of the Plan.

The Debtors believe that the Distributions under the Plan will provide all Holders of Claims against and Interests in the Debtors a greater recovery on account of Allowed Claims and Interests than would a liquidation of the Debtors' assets conducted under chapter 7 of the Bankruptcy Code. Furthermore, Distributions under the Plan to Holders of Claims would be made more quickly than Distributions by a chapter 7 trustee and a chapter 7 trustee would charge a substantial fee, reducing the amount available for Distribution on account of Allowed Claims. Thus, the Debtors believe that confirmation and consummation of the Plan, is in the best interests of all Holders of Claims and Interests.

Under the Bankruptcy Code, only Holders of Claims in certain "impaired" Classes are entitled to vote on the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under the Plan unless (a) the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (b) notwithstanding any legal right to an accelerated payment of such claim or interest, the Plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

The following table summarizes (a) the treatment of Claims and Interests under the Plan, (b) which Classes are impaired by the Plan, (c) which Classes are entitled to vote on the Plan, and (d) the estimated recoveries for holders of Claims and Interests. The table is qualified in its entirety by reference to the full text of the Plan.

1

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| 1 | Tax Claims | Allowed Tax Claims shall be paid in full, in Cash, on or about the Effective Date. | Unimpaired | No (Deemed to Accept) | 100%[2] |
| 2 | General Unsecured Claims | Holders of Allowed General Unsecured Claims will receive a pro rata Distribution of Liquidating Debtor Cash available on a Distribution Date. | Impaired | Yes | 3-6%[3] |
| 3 | Subordinated Claims | Allowed Subordinated Claims in Class 3 shall receive no Distribution. | Impaired | No (Deemed to Reject) | 0% |
| 4 | Interests | Interests shall be cancelled and discharged, with the Holders of such Interests receiving no Distribution on account of such Interests. | Impaired | No (Deemed to Reject) | 0% |

## DEEMED CONSOLIDATION

The Plan is being proposed as a joint plan of liquidation for all of the Debtors. The Plan also constitutes and incorporates a motion requesting that the Bankruptcy Court substantively consolidate the Debtors' Estates solely for purposes of voting and making Distributions as more fully set forth below. Thus, the Plan must meet the requirements for section 1129 of the Bankruptcy Code with respect to the Debtors on a consolidated basis in order to be confirmed.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

---

[2] The sum of all Tax Claims is $9,253.91.

[3] This range of recovery assumes total Allowed General Unsecured Claims of approximately $250 million and Cash available for distribution to the Holders of General Unsecured Claims of approximately $9 million for the low estimate and $17 million for the high estimate.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code to the extent such request is granted by the Bankruptcy Court. With respect to Administrative Claims that are allowed pursuant to sections 503(b)(1), 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claims Bar Date.

2.      "*Administrative Claims Bar Date*" means (other than for (i) quarterly U.S. Trustee fees and (ii) Professional Fee Claims) the 30th day after the Effective Date unless otherwise established by a Final Order.

3.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.      "*Allowed*" means, with reference to any Claim or Interest: (a) any Claim or Interest as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, either before or after the Effective Date, to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, either before or after the Effective Date; (c) any Claim or Interest expressly deemed Allowed by the Plan; or (d) any Claim or Interest affirmatively Allowed by the Debtors, or following the Effective Date, by the Plan Agent.

5.      "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of an interest in property or an obligation incurred by the Debtors, the Debtors in Possession, the Estates, or other appropriate party arising under Chapter 5 of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, or 547 through 553, or under similar or related state or federal statutes and/or common law, including without limitation, fraudulent transfer laws, and including without limitation, Claims or Causes of Action to recover preferences and fraudulent transfers from any entity that received cash or other property from any Debtor as identified in the Plan, Disclosure Statement, any schedule or exhibit thereto, a Debtor's Statement of Financial Affairs or as identified in the Debtors' accounts payable system.

6. "*Ballots*" means the ballots approved by the Bankruptcy Court in the Disclosure Statement Order upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Notice and Claims Agent on or before the Voting Deadline.

7. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended, and as applicable to the Chapter 11 Cases.

8. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

9. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

10. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

12. "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, claims for relief, rights, suits, debts, dues, damages, reckonings, accounts, rights to legal remedies, rights to equitable remedies, rights to payment, controversies, agreements, covenants, promises, judgments of every type, responsibilities, disputes, assertions, allegations, proceedings, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date and also includes, without limitation: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or federal law fraudulent transfer claim.

13. "*Chapter 11 Cases*" means the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

14. "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

15. "*Claims Bar Date*" means the applicable deadline by which proofs of Claim must be Filed under the Claims Bar Date Order or under this Plan.

16. "*Claims Bar Date Order*" means the order of the Bankruptcy Court establishing the deadline by which proofs of Claim must be Filed (Docket No. 192).

17.    "*Claims Reserve*" means a reserve to be established by the Debtors into which Cash in an amount that the Plan Agent reasonably estimates to satisfy Allowed and Disputed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article VIII.D, and Allowed and Disputed Tax Claims shall be deposited on or before the Effective Date, which account shall vest in the Liquidating Debtor as of the Effective Date; *provided* that any amounts in the Claims Reserve not required to pay Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article VIII.D, or Allowed Tax Claims shall constitute Liquidating Debtor Cash.

18.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article IX hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

19.    "*Committee*" means the Official Committee of Unsecured Creditors appointed by the United States Trustee.

20.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article XV.A hereof having been: (a) satisfied; or (b) waived pursuant to Article XV.C hereof.

21.    "*Confirmation Date*" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

22.    "*Confirmation Hearing*" means the hearing or hearings held by the Bankruptcy Court to consider Confirmation, as such hearing may be adjourned or continued from time to time in the Debtors' sole discretion.

23.    "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24.    "*Consummation*" means the occurrence of the Effective Date.

25.    "*Debtor*" or "*Debtor in Possession*" means one of the Persons in the above-captioned Chapter 11 Cases, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

26.    "*Debtor Released Claims*" shall have the meaning set forth in Article XVI.C.

27.    "*Debtor Releases*" shall have the meaning set forth in Article XVI.C of the Plan.

28.    "*Disallowed*" means, with reference to any Claim, a finding or determination of the Bankruptcy Court in a Final Order, including the Bar Date Order, or a provision of the Plan, providing that a Claim shall not be Allowed, or as to which the Bankruptcy Court has otherwise ruled or ordered that such Claim should be temporarily disallowed pursuant to section 502(d) of the Bankruptcy Code.

29.    "*Disclosure Statement*" means the Disclosure Statement portion of this Combined Plan and Disclosure Statement, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

30.    "*Disclosure Statement Order*" means the Order (I) Conditionally Approving Disclosure Statement, (II) Approving Procedures for Solicitation and Tabulation of Votes to

Accept or Reject Plan, (III) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, and (IV) Granting Related Relief (Docket No. [__]).

31.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

32.     "*Disputed General Unsecured Claims Reserve*" means the Reserve established and maintained by the Plan Agent in accordance with Article XIII.A.1 hereof.

33.     "*Distribution*" means the payment of Cash or other property, as the case may be, in accordance with the Plan and the Confirmation Order.

34.     "*Distribution Date*" means (a) the Effective Date or (b) any Subsequent Distribution Date.

35.     "*Distribution Record Date*" means the date on which the Confirmation Order is entered or such other date that is designated by the Debtors or following the Effective Date, the Plan Agent.

36.     "*Effective Date*" means the date declared by the Debtors, after consultation with the Plan Agent, on which the Confirmation Order becomes a Final Order and all of the conditions specified in Article XV.B hereof have been satisfied or waived pursuant to Article XV.C hereof.

37.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

38.     "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

39.     "*Exculpated Party*" means each of (a) the Debtors, (b) Drew McManigle, in his capacity as the Debtor's Chief Restructuring Officer, (c) each member of the Committee, (d) the Liquidating Debtors, and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's current subsidiaries and Affiliates, and its and their officers, directors, shareholders, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals in any such persons' capacity as such.

40.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

41.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in or in connection with the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent or the Bankruptcy Court through the PACER or CM/ECF website.

42.     "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new

trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided, however*, that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule may be Filed with respect to such order and shall not cause such order not to be a Final Order.

43.     "*General Unsecured Claim*" means any Unsecured Claim against any Debtor (including, for the avoidance of doubt, any Investor Claim) that is not otherwise paid in full or otherwise satisfied during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court, excluding an Administrative Claim, Tax Claim, or Professional Fee Claim.

44.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

45.     "*Holder*" means any Entity holding a Claim or an Interest.

46.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

47.     "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

48.     "*Indemnity Reserve*" means a reserve of $250,000 to fund the Debtors' indemnity obligations to the Management Team; *provided, however*, that if no Holder of a Class 2 claim opts out of the Release, then there shall be no Indemnity Reserve.

49.     "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests in any Debtor, including, without limitation, any options, warrants, rights, or other securities or agreements to acquire any common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing, or to a Final Order providing for the recharacterization thereof.

50.     "*Interim Compensation Order*" means the Order Granting Debtors' Motion for an Order under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (Docket No. 66).

51.     "*Investor Claim*" means a Claim filed by a member of the class approved in the Amended Order Certifying Class and Final Approval of Settlement, Cause No. DC-22-04656, 101st Judicial District of Dallas County, Texas, which was been assigned to the PM Settlement Trust as part of the Class Action Settlement, or a Claim filed by a Person who elected to opt out of such class.

52.     "*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

53.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

54.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

55.     "*Liquidating Debtor*" means the substantively consolidated Debtors on and after the Effective Date.

56.     "*Liquidating Debtor Assets*" means all of the Debtors' and Estates' assets on the Effective Date and the proceeds from such assets, including but not limited to the Liquidating Debtor Cash and the Reserves.

57.     "*Liquidating Debtor Cash*" means (i) any remaining funds in the Professional Fee Account after the payment of Allowed Professional Fee Claims, (ii) any amounts remaining in the Claims Reserve after the payment of Allowed Administrative Claims (other than Professional Fee Claims), statutory fees in accordance with Article VIII.D hereof, or Allowed Tax Claims, (iii) any amounts remaining in the Disputed General Unsecured Claims Reserve following the payment of amounts reserved therein on account of Disputed General Unsecured Claims; (iv) any amounts remaining in the Indemnity Reserve following payment of indemnity obligations or, if no Holders of Class 2 Claims opt out of the release, then all of the Indemnity Reserve shall be Liquidating Debtor Case, and (v) any other Cash held by the Debtors or the Plan Agent, net of the Operating Reserve, including the proceeds of any post-confirmation sales of assets..

58.     "*Operating Reserve*" means the reserve maintained by the Plan Agent from the Liquidating Debtor Assets for the reasonable costs and expenses of administering the Liquidating Debtor, including the reasonable costs and expenses incurred by the Plan Agent and the Plan Agent Professionals and anticipated wind-up costs.

59.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

60.     "*Petition Date*" means August 10, 2022.

61.     "*Plan*" means this Joint Plan of Liquidation of Minerva Resources, LLC and Cronus Mineral Holdings, LLC Under Chapter 11 of the Bankruptcy Code, dated June 16, 2023, as the same may be amended, supplemented, or modified from time to time, including, without limitation, any exhibits hereto, which are incorporated herein by reference.

62.     "*Plan Agent*" means Drew S. McManigle as of the Effective Date.

63.     "*Plan Agent Professionals*" means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Plan Agent (in their capacities as such).

64.     "*Plan Supplement*" means the supplemental appendix to this Plan, Filed with the Bankruptcy Court no later than seven (7) calendar days prior to the Voting Deadline, which contains, among other things, the Schedule of Retained Causes of Action, and any schedules, lists, or documents contemplated by this Plan that are identified as part of the Plan Supplement.

65.     "*Pro Rata*" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

66.     "*Professional*" means an Entity employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

67.     "*Professional Fee Account*" means the Debtors' segregated bank account funded by the Debtors and Plan Agent in an amount equal to the Professional Fee Reserve; *provided* that any remaining amounts in the Professional Fee Account after payment in full of all Allowed Professional Fee Claims shall constitute "Liquidating Debtor Cash."

68.     "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

69.     "*Professional Fees*" means all fees, costs and expenses incurred in these Chapter 11 Cases by any Professional and awarded by Final Order of the Bankruptcy Court pursuant to sections 328, 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

70.     "*Professional Fee Reserve*" means the total amount of Professional Fee Claims estimated in accordance with Article VIII.B.2.

71.     "*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Chapter 11 Cases.

72.     "*Release Opt-Out*" means the election, to be made solely through validly-submitted Ballots, to opt-out of the release provisions of this Plan.

73.     "*Released Party*" means each of (a) the Debtors, (b) the Debtors' Professionals, (c) Pablo Cortez, (d) Debbie Davis, and (e) Davood Ghorbani.

74.     "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors, (b) each Holder of a Claim that is deemed to accept the Plan, (c) each other Holder of a Claim that is entitled to vote on the Plan and does not elect the Release Opt-Out on its Ballot, and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's current subsidiaries, and its and their managed accounts or funds, such Entity and its current officers, directors, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals, in their capacities as such, including but not limited to in any such persons' capacity as director and/or officer (or any similar position) of any of the Debtors or any of the Debtors' subsidiaries, and predecessors and successors in interest of any such party.

75.     "*Reserves*" means, collectively, the Operating Reserve, the Claims Reserve, the Professional Fee Reserve, and the Indemnity Reserve.

76.     "*Retained Causes of Action*" means, collectively, all Causes of Action which may be asserted by or on behalf of the Debtors or the Estates, a nonexclusive list of which is set forth in the Schedule of Retained Causes of Action, against any third parties, investors, or individuals that the Debtors or the Estates own or have an interest in or can assert in any fashion, whether prepetition or postpetition, including, without limitation, litigation claims, whether such Causes of Action arise from contract, tort theories of liability, insurance claims, statutory claims, common law claims, equitable claims or other claims, objections to Claims, adversary proceedings, Avoidance Actions against any Entity identified in the Statement of Financial Affairs of any Debtor as a recipient of a payment made or property transferred by or on behalf of

such Debtor prior to the Petition Date, and all Causes of Action, claims, demands and rights, in each case, that have not been released, exculpated, waived, settled or barred pursuant to this Plan.

77.     "*Sales*" means the sale of any assets of the Debtors consummated pursuant to an Order of this Court, whether such sale occurs prior to or after the Effective Date.

78.     "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action to be retained by the Estates and assigned to the PM Settlement Trust on the Effective Date.

79.     "*Secured*" means: when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

80.     "*Statement of Financial Affairs*" means the Statement of Financial Affairs Filed by each of the Debtors on August 24, 2022 (Docket Nos. 43 and 45).

81.     "*Subordinated Claims*" means any Claim that is subject to subordination under 11 U.S.C. § 510(b) or (c) pursuant to an Order of the Bankruptcy Court, including the Confirmation Order.

82.     "*Subsequent Distribution Date*" means any date after the Effective Date on which the Plan Agent makes a Distribution after determining that a Distribution should be made in light of, *inter alia*, resolutions of Disputed Claims, the administrative costs of such a Distribution, and the Liquidating Debtor Cash for Distribution.

83.     "*Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code or that is a Secured Claim.

84.     "*Third-Party Released Claims*" shall have the meaning set forth in Article XVI.D.

85.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

86.     "*Unsecured*" means not Secured.

87.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

88.     "*Voting Deadline*" means August 14, 2023, the deadline for submitting votes to accept or reject the Plan as set by the Bankruptcy Court.

B.     *Rules of Interpretation*

For purposes of this Plan, unless otherwise specified herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (2) any reference in this Plan to a contract,

instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (6) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtors or the Plan Agent in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time*

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day, but shall be deemed to have occurred as of the required date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors not incorporated in Texas shall be subject to principles of conflict of laws.

E.    *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## BACKGROUND

A.    *Overview of the Debtors' Operations Prior to the Petition Date*

Minerva was formed effective as of January 1, 2021, for the purpose of owning non-operated working interests in various oil and gas assets.  The owners of several non-operated assets contributed those assets to the newly formed Minerva to create a shared pool of assets.  As agreed by the members, the allocation of equity interests in Minerva was based on the original cost basis of the assets each member contributed.

At the time of Minerva's formation, some wells had not yet been completed or were in the early stages of production. As such, each member made the decision that they were better off sharing the risk of asset performance across many wells—via diversification—than retaining their interests in only a few wells. This diversification is particularly important for small percentage, non-operated working interests, because the contributors had little ability to influence the operator. As such, Minerva helped the parties manage the risk that their wells would underperform. Further, the parties believed that the consolidation of non-operated assets in a new entity might enable the wells to collectively secure a line of credit (that could not be secured with just a few assets), which line of credit would be used to acquire additional non-operated interests. While the line of credit was never secured by Minerva, the consolidation of assets did allow the members to grow the value of Minerva organically, through a series of sales and purchase transactions, which benefited all of its owners.

At the time of its formation, the original members of Minerva were: (i) Minerva Resources Management, LLC, (ii) Strategic Energy Assets – V, LLC, (iii) Strategic Energy Assets – VII, LLC, (iv) SEA VIII Master Fund, LLC, (v) Resolute Capital Partners, LLC ("RCP"), (vi) HomeBound Resources, LLC ("Homebound"), and (vii) PetroRock Mineral Holdings, LLC ("PetroRock").

Cronus was formed for the purpose of holding certain overriding royalty interests in oil and gas properties.  Cronus is also one of the owners of the company that manages Minerva.

12

In June 2021, a dispute arose between RCP and HomeBound, LLC regarding the management of PetroRock. HomeBound, LLC resigned as the manager of PetroRock after refusing to make certain interest payments due to PetroRock's lenders. RCP then became the manager of PetroRock and sold PetroRock's units in Minerva back to Minerva for cash. On information and belief, this cash was used to make the interest payments to PetroRock's lenders that was due at the end of June 2021 and to payoff other notes. Following this transaction with PetroRock, Minerva agreed to buy back the units owned by RCP and HomeBound.

     B.     *Events Leading to the Commencement of the Chapter 11 Cases*

On or about September 24, 2021, the Securities and Exchange Commission filed an administrative proceeding alleging that RCP and HomeBound, and their respective principals, fraudulently raised over $200 million from investors in connection with certain debt funds associated with PetroRock.

On May 3, 2022, PetroRock filed a lawsuit against, amongst others, Minerva and Cronus, Cause No. DC-22-04656, in the 101st Judicial District Court of Dallas County, Texas (the "State Court Lawsuit"), seeking a court-supervised liquidation and wind-up of PetroRock.

On May 24, 2022, various investors in the PetroRock debt funds intervened in the State Court Lawsuit, alleging, inter alia, that certain of PetroRock's assets were fraudulently transferred to Minerva and Cronus, among others.

On June 14, 2022, the intervenors filed an emergency application for a Temporary Restraining Order against Cronus and Minerva, among others, seeking to freeze bank accounts and enjoin transfers among various defendants. The Court heard argument on the application on June 16 and entered an order on or about that day, granting intervenors relief. As a result of the entry of the Temporary Restraining Order and at the request of PetroRock's counsel, various oil and gas operators ceased paying Minerva royalties.

In lieu of a hearing on PetroRock's motion for the appointment of a wind-up agent and on intervenor's application for a temporary injunction, the parties entered into a Rule 11 agreement regarding various outstanding issues. The court accepted the parties' agreements as it related to the temporary injunction, but appointed its own wind-up agent in place of the agent requested by PetroRock.

On June 27, 2022, various equity investors in certain equity funds that previously invested in Minerva intervened in PetroRock's lawsuit, alleging fraudulent transfers against Minerva and Cronus and various securities claims against other defendants.

     C.     *Material Events During the Chapter 11 Cases*

     1.     Commencement of the Chapter 11 Cases and First Day Motions

On August 10, 2022, each of the Debtors filed a voluntary chapter 11 petition in the Bankruptcy Court. The Debtors' cases are jointly administered under Case No. 22-32291.

On August 15, 2022, the Bankruptcy Court held a hearing on certain "first day motions." Relief granted by the Bankruptcy Court in the "first day orders" included (i) authority to pay Joint Interest Billings (Doc. No. 31), and (ii) authorization to maintain the Debtors' existing cash management system (Doc. No. 30).

2.      Appointment of the Committee

On August 25, 2022, the United States Trustee appointed the Committee, whose members are Jonathan M. Hicks, Todd J. Bossier, and Tre Black, in his capacity as Windup Representative for Petrorock Mineral Holdings, LLC (Doc. No. 46).

3.      Retention of Professionals

Throughout this case, the Debtors have utilized various professionals to assist them in the successful liquidation of their assets and completion of their bankruptcy case. The Debtors retained Porter Hedges, LLP as their bankruptcy counsel, which the Court approved on September 13, 2022 (Doc. No. 64). The Debtors retained MACCO Restructuring Group, LLC as their financial advisors and Drew McManigle as their Chief Restructuring Officer which the Court approved on September 13, 2022 (Doc. No. 65).  The Court also approved the post-petition employment of professionals used in the ordinary course of business on September 27, 2022 (Doc. No. 79).  The Committee is represented by Munsch Hardt Kopf & Harr P.C. (Doc. No. 82).

4.      Attempted Sale of Substantially All of the Debtors' Assets

On September 21, 2022, the Bankruptcy Court entered an Order Authorizing Employment of EnergyNet.com, LLC as Sale Broker (Doc. No. 78).  EnergyNet ran a marketing and sales process for substantially all of the Debtors' assets which resulted in a high bid of $13 million.  The Debtors spent more than six weeks negotiating with the high bidder.  Ultimately, the high bidder withdrew its bid and did not move forward with a transaction.  The other bidders for the Debtors' assets either no longer had an interest in acquiring the Debtors' assets or reduced their bid to an amount that the CRO believed did not reflect fair value for the Debtors' assets.

5.      Bar Date

On March 21, 2023, the Court entered an order setting April 28, 2023 as the deadline for filing proofs of claim in these cases, including claims under Section 503(b)(9) (Doc. No. 192). The deadline for governmental units to file claims was February 6, 2023.

6.      Class Action Settlement

On April 21, 2023, an Amended Order Certifying Class and Final Approval of Settlement was entered in the State Court Lawsuit (the "Class Action Settlement").  The terms of the Class Action Settlement include, among other things, (i) creation of the "PM Liquidating Trust," (ii) appointment of Tre Black as the PM Liquidating Trustee, (iii) the assignment of all PetroRock assets to the PM Liquidating Trust, and (iv) subject to the right to opt out, each class member assigned its claims against the Debtors (i.e. the Claims filed in these Chapter 11 Cases) to the PM Liquidating Trust.

A total of 64 parties opted out the Class Action Settlement.  Accordingly, all other Investor Claims were assigned to the PM Liquidating Trust. As approved by the Disclosure Statement Order, the PM Liquidating Trust shall cast a master ballot as the assignee of all Investor Claims except for the 64 opt out parties who will each receive a Class 2 ballot.

# ARTICLE III.
## TAX CONSEQUENCES

A.      *Introduction.*

The following discussion summarizes certain federal income tax consequences of the transactions described herein and in the Plan.  This discussion is for informational purposes only and does not constitute tax advice.  This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice as of the date of this Disclosure Statement and will not be updated for subsequent tax or factual developments.  Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed.  Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, insurance companies, mutual funds, regulated investment companies, real estate investment trusts, trusts, S corporations, dealers and traders in securities and currencies, partnerships and other entities classified as partnerships for federal tax purposes and tax-exempt organizations.  Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties including subsequent legislative and other tax changes.  No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues.  There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.  **HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

B.      *Tax Consequences to the Debtor and Equity Interest Holders.*

Because the Debtors believe that few, if any, of the Claims relate to indebtedness of the Debtors, they anticipate that they will realize little, if any, cancellation of indebtedness income in respect of the Claims.  The Debtors anticipate that they will deduct all or substantially all of the payments under the Plan as ordinary and necessary business expenses, although there is no certainty that this would be respected if challenged by the IRS.

The Debtors will recognize gain or loss on the sale of assets to third parties equal to the sales price of such assets less the Debtors' adjusted tax basis in such properties.  The sales price includes all indebtedness assumed by a buyer as well as all other consideration received by the Debtors.  The amount and tax character of such gain and loss will depend on the applicable facts and circumstances.

There will be no distributions to Holders of Interests under the Plan.  Given that Interests will be cancelled and discharged, with Holders of such Interests receiving no Distributions on account of such interests, each Holder of Interests will recognize a loss in respect of its Interest equal to such Holder's adjusted tax basis in such Interest. Such losses will constitute capital losses or ordinary losses based on the character of the assets of the Debtors.  The use of capital losses to offset ordinary income is subject to limitations.

C.     *Tax Consequences to Claimants.*

**PM Settlement Trust.**  A liquidating trust, created primarily for the benefit of creditors, is generally treated as a trust if its primary purpose is to liquidate and distribute the assets transferred to the trust for the benefit of such creditors, and its activities are generally consistent therewith.  Transfers of assets to a liquidating trust by an obligor are generally treated as transfers to the beneficiaries of such trust, with such beneficiaries treated as the owners of such assets so transferred.

The Debtors anticipate that the PM Settlement Trust will constitute a liquidating trust, and thus transfers of cash and other property by the Debtors to the PM Settlement Trust will constitute transfers of such cash and other property by the Debtors to the Holders of Claims.

**In General**.  The federal income tax consequences of the implementation of the Plan to a holder of a Claim can depend, among other things, on: (a) whether the Claim constitutes a capital asset as to the Claimant holding same, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, and (e) whether the Claimant utilizes the accrual or cash method of accounting for tax purposes.

**Gain or Loss on Exchange**.  Generally, to the extent a Claim constitutes a capital asset as to the holder thereof, the holder will realize a gain or loss on the exchange under the Plan of his Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder, and (ii) the adjusted basis of the Allowed Claim exchanged therefore. Any such gain recognized generally will be a capital gain, and such gain will be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange.

Any loss recognized by a holder of an Allowed Claim will be a capital loss if the Claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

To the extent a Claim does not constitute a capital asset as to the holder thereof, the tax treatment to a holder receiving cash or other property in respect of such Claim can vary, with such holder possibly recognizing ordinary income equal to the amount of cash and the fair market value of other property received in respect of such Claim, with no basis offset.

D.      *Information Reporting and Backup Withholding.*

Under the backup withholding rules of the IRC, holders of Claims may be subject to backup withholding with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the holder's federal income tax liability. Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

E.      *Importance of Obtaining Professional Assistance.*

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. YOU ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT, THE PLAN OR ANY RELATED MATERIALS, IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY YOU, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON YOU UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED; AND (B) ANY SUCH DISCUSSIONS ARE BEING USED ONLY IN CONNECTION WITH SATISFYING THE REQUIREMENTS IMPOSED UNDER THE BANKRUPTCY CODE FOR DISCLOSURE STATEMENTS, AND (C) YOU SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX ADVISOR WITH RESPECT TO YOUR FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES BASED ON YOUR PARTICULAR CIRCUMSTANCES.**

## ARTICLE IV.
## CERTAIN RISK FACTORS TO BE CONSIDERED

Prior to voting to accept or reject the Plan, Holders of Claims should read and carefully consider the risk factors set forth below, in addition to the information set forth in this Disclosure Statement together with any attachments, exhibits, or documents incorporated by reference hereto. The factors below should not be regarded as the only risks associated with the Plan or its implementation.

A.      *Certain Bankruptcy Law Considerations*

1.      Risk of Non-Confirmation of the Plan

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes. Moreover, the Debtors can make no assurances that they will receive the requisite acceptances to confirm

the Plan, and even if all Voting Classes voted in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy Court, which may exercise substantial discretion as a court of equity, may choose not to confirm the Plan. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan or other proceeding.

2.      Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur within 60 calendar days after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtors and all Holders of Claims or Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtors' obligations with respect to Claims and Interests would remain unchanged.

3.      Conversion to Chapter 7 Cases

If no chapter 11 plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interests of Holders of Claims and Interests, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. See the Liquidation Analysis, filed as part of the Plan Supplement, for an analysis of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Interests.

4.      Additional Factors Affecting Recoveries

There can be no assurance that the estimated Allowed amount of Claims in certain Classes will not be significantly more than projected, which, in turn, could cause the value of distributions to be reduced substantially. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the assumptions underlying the projected recoveries discussed in this Disclosure Statement, and the variation may be material.

B.      *The Debtors could withdraw the Plan*

The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors.

C.      *The Debtors have no duty to update*

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

D.      *No representations outside this disclosure statement are authorized*

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

E.      *No legal or tax advice is provided by this disclosure statement*

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or Interest should consult its own legal counsel and accountant as to legal, tax, and other matters concerning its Claim or Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

F.      *No admission made*

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtors, the Liquidating Debtors, the Plan Agent or Holders of Claims or Interests

## ARTICLE V.
## VOTING PROCEDURES AND REQUIREMENTS

A.      *Parties Entitled To Vote*

Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on a plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not vote on the plan. If a claim or interest is not impaired by the plan, the Bankruptcy Code conclusively presumes the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims that cast ballots for acceptance or rejection of the plan; and (ii) interests as acceptance by interest holders in that class that hold at least two-thirds (2/3) in dollar amount of the interests that cast ballots for acceptance or rejection of the plan.

Class 2 is Impaired under the Plan and entitled to vote to accept or reject the Plan.

B.  *Voting Deadline*

Before voting to accept or reject the Plan, each Holder of a Claim entitled to vote (an "Eligible Holder") should carefully review the Plan

Ballots will be provided for Eligible Holders of the Voting Record Date (*i.e.*, July 7, 2023) to vote to accept or reject the Plan.

Each Ballot contains detailed voting instructions and sets forth in detail, among other things, the deadlines, procedures, and instructions for voting to accept or reject the Plan, the Voting Record Date for voting purposes, and the applicable standards for tabulating Ballots. The Debtors have engaged KCC as their solicitation agent (the "Solicitation Agent") to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan.

FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE SOLICITATION AGENT AT THE ADDRESS SET FORTH BELOW ON OR BEFORE THE VOTING DEADLINE OF AUGUST 14, 2023 AT 5:00 P.M. CENTRAL, UNLESS EXTENDED BY THE DEBTORS.

A Ballot may be delivered via the Solicitation Agent's online portal at https://www.kccllc.net/minerva. Click on the "Submit eBallot" section of the website and follow the instructions to submit your Ballot. You will need the unique eBallot ID# and PIN# printed on the cover sheet to this ballot in order to retrieve and submit your customized electronic Ballot. Each eBallot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.

The Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted. Creditors who cast a Ballot using the Solicitation Agent's online portal should NOT also submit a hardcopy Ballot.

If you vote by mail, your Ballot must be returned by the Voting Deadline with an original signed copy, by first class mail, overnight courier, or personal delivery, to:

> **BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO:**
> Minerva Resources, LLC Ballot Processing Center
> c/o KCC
> 222 N. Pacific Coast Highway, Suite 300
> El Segundo, CA 90245

FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT NO LATER THAN THE VOTING DEADLINE. ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED. THE DEBTORS MAY REQUEST THAT THE SOLICITATION AGENT ATTEMPT TO CONTACT SUCH VOTERS TO CURE ANY SUCH DEFECTS IN THE BALLOTS. THE FAILURE TO VOTE DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN. AN OBJECTION TO THE CONFIRMATION OF THE PLAN, EVEN IF TIMELY SERVED, DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN.

C.      *Voting Procedures*

The Debtors are providing copies of this Disclosure Statement (including all exhibits and appendices) and related materials and a Ballot (collectively, a "Solicitation Package") to each Eligible Holder.

Except as provided below, unless the Ballot is timely submitted to the Solicitation Agent before the Voting Deadline, together with any other documents required by such Ballot, the Debtors may reject such Ballot as invalid, and therefore decline to utilize it in connection with seeking confirmation of the Plan.

The delivery of an accepting Ballot pursuant to the procedures set forth above will constitute the agreement of the creditor with respect to such Ballot to accept (i) all of the terms of, and conditions to, this Solicitation; and (ii) the terms of the Plan including the injunction, releases, and exculpations set forth therein. All parties in interest that do not vote to accept the Plan retain their right to object to confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent, properly completed Ballot for acceptance or rejection of the Plan.

The Plan Supplement, once filed, will be made available for review on the website of the Solicitation Agent at https://www.kccllc.net/minerva. The Debtors reserve the right to modify, amend, supplement, restate or withdraw the Plan Supplement after it is filed. The Debtors will

file and make available on the Solicitation Agent's website site any modified, amended, supplemented or restated Plan Supplement as promptly as possible.

      D.    *Waivers of Defects, Irregularities, etc.*

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Solicitation Agent and/or the Debtors, as applicable. The Debtors reserve the right to reject any Ballot submitted by any of the Debtors' respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful. The Debtors further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Debtors' creditors. The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

## ARTICLE VI.
## CONFIRMATION OF THE PLAN

      A.    *Confirmation Hearing*

A hearing is scheduled for August [__], 2023 at [___] a.m. (prevailing Central time) to consider confirmation of the Plan (the "Confirmation Hearing").

      B.    *Requirements for Confirmation of the Plan*

      1.    Requirements of Section 1129(a) of the Bankruptcy Code

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied including, without limitation, whether:

          (a)    All provisions, terms and conditions hereof are approved in the Confirmation Order.

          (b)    the Plan complies with the applicable provisions of the Bankruptcy Code;

          (c)    the Debtors have complied with the applicable provisions of the Bankruptcy Code;

(d)     the Plan has been proposed in good faith and not by any means forbidden by law;

(e)     any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(f)     with respect to each Class of Claims or Interests, each Holder of an impaired Claim or impaired Interest has either accepted the Plan or will receive or retain under the Plan, on account of such Holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code;

(g)     except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not impaired under the Plan;

(h)     except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claims;

(i)     at least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class; and

(j)     all fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

2.      Best Interests Test

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either (i) accept the plan or (ii) receive or

retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test."

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Debtors believe that under the Plan all Holders of Impaired Claims and Interests will receive property with a value in excess of the value such Holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors' belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Holders of Impaired Claims and Interests and (ii) the Liquidation Analysis.

The Debtors believe that any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtors. The Liquidation Analysis is solely for the purpose of disclosing to Holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that the Bankruptcy Court will accept the Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

3.      Feasibility

Also as noted above, section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed the Debtors' ability to meet their obligations under the Plan. The Plan provides for appropriate reserves for payment of Other Secured Claims and administrative and priority claims and mechanisms for consummation of distributions to all Holders of Claims entitled to them. Thus, the Debtors believe that, following consummation of the Plan, there will be no need for further liquidation or reorganization.

4.      Non-Consensual Confirmation

The Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired Class that rejects or is presumed to reject the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes, pursuant to section 1129(b) of the Bankruptcy Code. Both of these requirements are in addition to other requirements established by case law interpreting the statutory requirements.

(a)     Unfair Discrimination Test

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Debtors believe the Plan satisfies the "unfair discrimination" test. Claims of equal priority are receiving comparable treatment.

(b)     Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class. As to dissenting classes, the test sets different standards depending on the type of claims in such class. The Debtors submit that if the Debtors "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it satisfies the "fair and equitable" requirement. The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for nonconsensual Confirmation of the Plan.

## ARTICLE VII.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors have concluded that the Plan is the best available alternative and will maximize recoveries to parties in interest, assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan are (i) the preparation and presentation of an alternative plan of reorganization or liquidation, or (ii) a liquidation under chapter 7 of the Bankruptcy Code.

A.     *Alternative Plan*

If the Plan is not confirmed, the Debtors (or if the Debtors' exclusive period in which to file a chapter 11 plan has expired, any other party in interest) could attempt to formulate a different plan. Such a plan would likely be an orderly liquidation of the Debtors' remaining assets which is already occurring under the Plan. The Debtors, however, submit that the Plan, as described herein, enables their creditors to realize the most value under the circumstances.

      B.     *Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law*

If no plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to their creditors in accordance with the priorities established by the Bankruptcy Code. The effect a chapter 7 liquidation would have on the recovery of holders of allowed Claims and Interests is set forth in the Liquidation Analysis.

Critically for the Holders of Investor Claims, a chapter 7 trustee would not be bound by the compromise set forth in this Plan for the allowance of all Investor Claims.  A chapter 7 trustee could instead elect to proceed with objecting to all Investor Claims and litigation the alleged fraudulent transfer issues.  This litigation would be expensive and time consuming and cause significant delay and reduction in distributions being made.

# ARTICLE VIII.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article IX.

      A.     *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Debtors or the Plan Agent agree to less favorable treatment for such Holder's Allowed Administrative Claim, and to the extent not paid before the Effective Date, each Holder of an Allowed Administrative Claim shall be paid in full in Cash first from the Claims Reserve on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

Except as otherwise provided in this Article VIII.A and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Administrative Claims arising between the Petition Date and the Effective Date must be Filed and served on the Plan Agent pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the requesting party no later than 90 days after the Effective Date or such other date fixed by the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

B.    *Professional Compensation*

1.    Final Fee Application

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash from the Professional Fee Account, in full, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim shall be Filed within thirty (30) days of the Effective Date and such applications and objections thereto (if any) shall be Filed in accordance with and comply in all respects with the Bankruptcy Code and the Bankruptcy Rules. Upon payment in full of all Allowed Professional Fee Claims, any balance of Cash remaining in the Professional Fee Account shall become Liquidating Debtor Cash and shall be transferred to the Plan Agent.

2.    Professional Fee Account and Reserve

On the Effective Date, the Debtors and Plan Agent shall establish and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve. The Professional Fee Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals. The funds in the Professional Fee Account shall not be considered property of the Estates or of the Debtors, *provided, however,* that following the payment in full of all Allowed amounts owing to Professionals, any remaining amount in the Professional Fee Account shall promptly be turned over to the Plan Agent without any further action or order of the Bankruptcy Court.

Professionals shall reasonably estimate their unpaid Professional Fee Claims before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) Business Days after the Confirmation Date, *provided, however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

C.    *Statutory Fees*

All fees due and payable pursuant to section 1930 of the Judicial Code prior to the Effective Date shall be paid by the Debtors on the Effective Date or as soon as reasonably practicable thereafter. After the Effective Date, the Plan Agent shall pay any and all post-Effective Date fees pursuant to section 1930 of the Judicial Code when due and payable from Liquidating Debtor Cash. The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Plan Agent shall File with the Bankruptcy Court quarterly post-confirmation operating reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Plan Agent during the applicable period, attested to by an authorized representative of the Plan Agent.

## ARTICLE IX.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.      *Summary of Classification*

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

### SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| 3 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 4 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.      *Treatment of Claims and Interests*

1.      Class 1: Tax Claim

(a)      *Treatment*: Allowed Tax Claims shall be paid in full, in Cash, on or about the Effective Date.

(b)      *Voting*: Class 1 Claims are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2: General Unsecured Claims

(a)      *Treatment*: Each Holder of an Allowed Class 2 General Unsecured Claim shall receive its Pro Rata share of the Liquidating Debtor Cash available on a Distribution Date.

28

        (b)    *Voting*: Class 2 General Unsecured Claims are Impaired. Holders of Class 2 General Unsecured Claims are entitled to vote to accept or reject the Plan.

3.       Class 3: Subordinated Claims

        (a)    Treatment:  Allowed Subordinated Claims in Class 3 shall receive no Distribution.

        (b)    Voting: Class 3 is Impaired. Holders of Class 3 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Interests are not entitled to vote to accept or reject the Plan.

4.       Class 4: Interests

        (a)    *Treatment*: Class 4 Interests shall be cancelled and discharged, with the Holders of such Interests receiving no Distribution on account of such Interests.

        (b)    *Voting*: Class 4 is Impaired. Holders of Class 4 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, Holders of Interests are not entitled to vote to accept or reject the Plan.

D.      *Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors', Estates' or the Plan Agent's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

## ARTICLE X.
## ACCEPTANCE REQUIREMENTS

Pursuant to sections 1126(c) and 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, (a) an impaired class of claims has accepted a chapter 11 plan if the holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in such class actually voting have voted to accept the plan and (b) an impaired class of interests has accepted the plan if the holders of at least two-thirds in amount of the allowed interests in such class actually voting have voted to accept the plan.

A.      *Acceptance or Rejection of this Plan*

1.       Deemed Acceptance of the Plan

Class 1 is Unimpaired under the Plan. Therefore, Class 1 is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.     Voting Classes

Class 2 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

3.     Deemed Rejection of the Plan

Classes 3 and 4 are Impaired under the Plan and are not entitled to receive or retain any property on account of the Claims and Interests in Classes 3 and 4. Therefore, Classes 3 and 4 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.     Elimination of Vacant Classes

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of Confirmation shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

B.     *Confirmation of This Plan Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

C.     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests (or any Class of Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date.

**ARTICLE XI.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

In addition to applicable provisions set forth elsewhere in the Plan, the following shall constitute the means of execution and implementation of this Plan.

A.     *Deemed Consolidation*

The Plan constitutes a motion for the deemed consolidation of the Debtors and their respective Estates solely for purposes of voting on the Plan, confirming the Plan, and making Distributions pursuant to the Plan. For purposes of quarterly fee assessments and calculations under 28 U.S.C. § 1930(a)(6)(A) and (B), this provision will not result in a de facto substantive consolidation whereby the Chapter 11 Cases collapse into a single case. Instead, all the pre-confirmation Chapter 11 Cases will continue as separate Chapter 11 Cases post-confirmation. Deemed consolidation solely for the purposes of voting on the Plan, confirming the Plan and making Distributions pursuant to the Plan is a condition precedent to the Effective Date. Accordingly, voting on the Plan shall be conducted and counted on a consolidated basis. On the

Effective Date, (a) the assets of the Debtors will be merged and/or treated as if they are merged for the purpose of paying Allowed Claims against the Debtors; (b) any Claim Filed or asserted against any of the Debtors will be deemed a Claim against all of the Debtors (and any duplication of claims arising from both primary operative documents and guaranty and/or other secondary obligations shall be eliminated and all such claims against the Debtors shall be treated as a single claim that eliminates such duplications); (c) all Interests will be eliminated; and (d) any obligation of any of the Debtors will be deemed to be an obligation of each of the Debtors. Except as set forth in this paragraph, such deemed consolidation shall not affect the legal and corporate structure of the Debtors nor affect Retained Causes of Action, including Avoidance Actions. Notwithstanding anything to the contrary herein, all Retained Causes of Action are preserved as they existed immediately before the Effective Date and will be assigned to the PM Settlement Trust. The deemed consolidation under this Plan shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of deemed consolidation under this Plan.

B.    *Compromise of Investor Claims*

Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Plan seeks approval of a compromise between the Estates and the Holders of Investor Claims.  Each of the Investor Claims asserted the same causes of action against the Debtors, including fraudulent transfers.  The Debtors asserted that these Claims were derivative claims owned by the Estates and not Claims that could be asserted by individual investors.  The Debtors also asserted that they had provided reasonably equivalent value to PetroRock and that the fraudulent transfer Claims lacked merit.  If the Plan is confirmed, all Investor Claims will be deemed Allowed in their face amount and receive a Pro Rata distribution.  If the Plan is not confirmed, the Investor Claims will be subject to protracted and expensive litigation on the merits that will both delay and reduced distributions.

C.    *Disallowance of Duplicate Claims.*

Holders of Allowed Claims who assert identical Claims against multiple Debtors shall be entitled to only a single satisfaction of such Claims without the need for a formal objection or further court order.  Married couples who separately filed identical Claims based on the same investment shall be entitled to only a single satisfaction of such Claims without the need for a formal objection or further court order.

D.    *Disallowance of Claims Waived in Class Action Settlement*

The following claims shall be disallowed on the Effective Date because, as part of the Class Action Settlement, these parties received releases and in exchange waived their claims to recover from the PM Settlement Trust:  Legacy of Faith Limited Partnership (Cronus Claim No. 144; Minerva Claim No. 159), Moving Future, LLC (Cronus Claim 145; Minerva Claim 160, and Upside Solutions (Cronus Claim No. 146; Minerva Claim No. 161).

E.    *Claims Stipulations and Agreement with the PM Settlement Trust*

Certain Investor Claims incorrectly asserted that they were entitled to treatment as a priority or Secured Claim.  All such Investor Claims were assigned to the PM Settlement Trust.

The PM Settlement Trustee stipulates that all Investor Claims shall be classified as General Unsecured Claims and no Investor Claim shall be treated as a priority or Secured Claim. Further, the PM Settlement Trustee stipulates and agrees that the Claims set forth in his master ballot (pursuant to which he will vote the vast majority of Investor Claims) supersedes the Claims filed by the PM Settlement Trust (Cronus Claim No. 909; Minerva Claim No. 917).

F.     *Claims Stipulation and Agreement with the Representative Plaintiffs in the State Court Lawsuit*

The Representatives Plaintiffs in the State Court Lawsuit filed $250 million claims against the Debtors (Cronus Claim No. 1706; Minerva Claim No. 1772) which will be deemed withdrawn on the Effective Date and shall not be entitled to vote on the Plan. These Claims are duplicative of the Claims being voted on the master ballot by the PM Settlement Trustee.

G.     *Motion to Subordinate and Objection to Claim No. 21 Filed Against Minerva*

The plan constitutes a motion to subordinate Claim No. 21 filed against Minerva by Resolute Management Services, LLC ("Resolute"). Resolute is the manager of the SEA Funds, who are equity holders in the Debtors. The Resolute Claim asserts identical, duplicate claims as the Investor Claims regarding alleged fraudulent transfers. The causes of action asserted by Resolute in its Claim are derivative estate claims that are being settled as part of the Plan. Resolute has not asserted any direct claim that it owns. Additionally, Resolute is managed by Tom Powell, one of the individuals named in the SEC charges arising out of PetroRock. If the Plan is confirmed, Resolute's Claim will be classified as a Class 3 Subordinated Claim pursuant to 11 U.S.C. § 510(b) and, in the alternative, 11 U.S.C. § 510(c).

H.     *Transactions Effective as of the Effective Date*

The transactions contemplated by the Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other Entity.

I.     *Vesting of Estate Property in the Liquidating Debtor*

On the Effective Date, all assets of the Debtors and of the Estates, including but not limited to (a) all Liquidating Debtor Cash, (b) the Reserves and (c) all property of the Estates shall be fully retained and vest in the Liquidating Debtor, free and clear of all liens, claims and encumbrances, except as otherwise provided in the Plan. Pursuant to 11 U.S.C §§ 1123(a)(5)(B), 1123(b)(3), and 1123(b)(6), the Liquidating Debtor shall be the successor to the Debtors for all purposes.

J.     *Plan Agent*

The appointment of the Plan Agent shall be effective as of the Effective Date. The Plan Agent shall be the sole officer, director and shareholder of the Liquidating Debtor. On the Effective Date, the Liquidating Debtor is deemed to have satisfied all liabilities for purposes of dissolution under applicable state law. To the extent they are Executory Contracts, the Debtors'

32

company operating agreements shall be assumed by the Liquidating Debtor. The Plan Agent is authorized, but not required, to execute and file all documents necessary to effectuate the dissolution of the Liquidating Debtor.

The Plan Agent shall be the sole entity responsible for, (a) administering the Liquidating Debtor Assets; (b) adjudicating, objecting to, settling, compromising or otherwise liquidating Claims for all purposes; and (c) defending compromising, and resolving any Causes of Action against the Debtors.

K.    *Continuation of Limited Operations*

From and after the Effective Date of the Plan, subject to the limitations set forth below, the Liquidating Debtor is authorized to (i) take such actions as are necessary to complete an orderly wind-down of its operations; (ii) file claim objections; (iii) make distributions; (iv) prosecute Causes of Action owned by the Estate, including all claims and causes of action arising under the Bankruptcy Code; (v) pursue, liquidate and administer property of the Estate; (vi) file tax returns; and (vii) take such other action as provided for under the Plan.

L.    *Post-Confirmation Sale of Assets*

The Plan Agent shall conduct an orderly sale of the Debtors' assets at such time as determined by the Plan Agent in his business judgment. The Plan Agent shall provide PM Settlement Trustee with a copy of any asset purchase agreement at least 14 days prior to a closing. The Plan Agent may, but shall not be required to, file a motion to sell asset of the Liquidating Debtor after the Effective Date if the proposed buyer requires a Final Order of this Court approving the sale free and clear pursuant to 11 U.S.C. § 363(f).

M.    *Plan Agent's Retention of the Debtors' Management Team and Management Incentive Plan*

The Plan Agent may retain Pablo Cortez and Debbie Davis (the "Management Team"), or other such individuals formerly employed by the Debtors, on an hourly basis to assist with operating and marketing the Liquidating Debtors' assets as necessary in the business judgment of the Plan Agent. As an incentive to continue working to maximize the value of the Liquidating Debtors' assets, the Management Team will be paid:

- 3% of Liquidating Debtor Cash upon closing of the sale of assets for amounts up to $9 million
- 5% of Liquidating Debtor Cash upon closing of the sale of assets for $9 million to $12 million
- 7% of Liquidating Debtor Cash upon closing of  the sale of assets for $12 million to $15 million
- 9% of Liquidating Debtor Cash upon closing of the sale of assets for amounts over $15 million.

N.      *Powers of the Plan Agent*

The Plan Agent, on behalf of the Liquidating Debtor, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable corporate law.  The Plan Agent is authorized and shall have the obligation to take all such actions as in his or her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

1.      Make all Distributions contemplated under the Plan;

2.      Consistent with maintaining the value and liquidating the residual assets of the Liquidating Debtor, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof;

3.      Supervise and administer the resolution, settlement and payment of Claims and the distributions to the holders of Allowed Claims in accordance with this Plan;

4.      Enter into any agreement required by or consistent with the Plan and perform all of the Liquidating Debtor's obligations thereunder;

5.      Abandon any of the assets of the Liquidating Debtor if the Plan Agent concludes that such assets are of no benefit to the Liquidating Debtor or the estate;

6.      Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Debtor, including without limitation all Avoidance Actions and all state and federal causes of action or any other litigation which constitute an asset of the Liquidating Debtor and pursue to settlement or judgment such actions;

7.      Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Case;

8.      Act in the name of or in the place of the Debtor in any action before the United States Bankruptcy Court or any other judicial or administrative body;

9.      Take actions and exercise remedies against any entity that owes money to the Liquidating Debtor, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

10.     Select and employ such professionals, agents or employees as the Plan Agent deems necessary to assist in the administration of the affairs of the Liquidating Debtor and compensate such persons;

11.     Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan;

12.     Propose any amendment, modification or supplement to this Plan or the Liquidating Debtor's corporate governance documents;

13.     File dissolution documents with the appropriate governmental agencies to dissolve the Liquidating Debtor;

14.     Receive, conserve and manage the assets of the Liquidating Debtor and sell pursuant to 11 U.S.C. § 363(f) or otherwise dispose of such assets for a price and upon such terms and conditions as the Plan Agent deems most beneficial to the estate and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

15.     Open and maintain bank accounts on behalf of or in the name of the Liquidating Debtor;

16.     Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Debtor;

17.     Pay all lawful expenses, debts, charges and liabilities of the Liquidating Debtor;

18.     Enforce all provisions of this Plan;

19.     Protect, perfect and defend the title to any of the assets of the Liquidating Debtor and enforce any bonds, mortgages or other obligations or liens owned by the Liquidating Debtor;

20.     Carry insurance coverage, including insurance to protect the Plan Agent against claims brought against the Plan Agent acting within his or her capacities with the Liquidating Debtor, in such amounts as they deem advisable;

21.     Establish such reserves as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Debtor; and

22.     Exercise such other powers and duties as are necessary or appropriate in the Plan Agent's discretion to accomplish the purposes of this Plan.

O.     *Resignation/Removal of the Plan Agent and Appointment of Successor*

The Plan Agent may resign at any time by filing a written notice of resignation with the Bankruptcy Court.  Any such resignation shall become effective on the earlier to occur of (i) thirty (30) days after the filing date of such notice; or (ii) the appointment of a successor Plan Agent by the Bankruptcy Court.  The Plan Agent may also be removed by the Bankruptcy Court for cause.

In the event of the death, resignation or removal of the Plan Agent, the Bankruptcy Court, after notice and a hearing, shall appoint a successor Plan Agent.  Any successor Plan Agent appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Plan Agent shall immediately become vested with all the rights, powers and duties of the Plan Agent.

P.     *Compensation Procedures*

For as long as the Plan Agent is Drew McManigle, the Plan Agent's compensation shall be on the same terms as approved by this Court for McManigle's compensation as Chief Restructuring Officer.  The compensation for any successor Plan Agent must be approved by the Bankruptcy Court in the order appointing the successor Plan Agent.  All professionals employed by the Plan Agent or the Liquidating Debtor shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis, without Bankruptcy Court approval, pursuant to the terms of their respective employment.

Q.     *Payment of Taxes*

The Liquidating Debtor shall be responsible for payments of all Allowed tax obligations of the Debtors including Tax Claims, in addition to any taxes imposed on the Liquidating Debtor or its assets.

R.     *Authority to Pursue, Settle, or Abandon Retained Causes of Action*

On the Effective Date, all Retained Causes of Action shall be transferred to the PM Settlement Trust.  The PM Settlement Trustee shall be solely responsible for prosecution and settlement of all Retained Causes of Action and shall have exclusive rights, powers, and interests to pursue, settle, or abandon such Retained Causes of Action. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, preclusion, or release of any such Retained Cause of Action.

**The Liquidating Debtor reserves and retains any and all Retained Causes of Action against any and all third parties, whether such Retained Causes of Action arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or the Distribution Record Date, including, without limitation, any and all Retained Causes of Action that the Liquidating Debtor may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; and (ii) any recipient of a transfer identified in the Debtors' Statements of Financial Affairs, including any amendments thereto, Filed in these Chapter 11 Cases based on Retained Causes of Action under chapter 5 of the Bankruptcy Code. THE ENTRY OF THE CONFIRMATION ORDER SHALL NOT CONSTITUTE *RES JUDICATA* OR PRECLUSION WITH RESPECT TO, OR OTHERWISE BAR, ESTOP OR INHIBIT, ANY ACTIONS BY THE PM SETTLEMENT TRUSTEE RELATING TO RETAINED CAUSES OF ACTION, EVEN IF NOT SPECIFICALLY IDENTIFIED IN THE PLAN, THE PLAN SUPPLEMENT, THE SCHEDULE OF RETAINED CAUSES OF ACTION, OR THE DISCLOSURE STATEMENT.**

On the Effective Date, the Plan Agent shall be substituted as a party of record in all pending litigation brought against the Debtors or their Estates without need for further order of the Bankruptcy Court.

The Schedule of Retained Causes of Action, listing Causes of Action to be retained and assigned to the PM Settlement Trust is included as part of the Plan Supplement. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the PM Settlement Trust will not pursue any and all available Causes of Action against it.

S.     *Filing of Monthly and Quarterly Reports*

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Agent until such time as the Liquidating Debtor's bankruptcy cases have been closed.

T.     *Books and Records*

Upon the Effective Date, the Debtors shall transfer and assign to the Liquidating Debtor full title to, and the Liquidating Debtor shall be authorized to take possession of, all of the books and records of the Debtors. Any such books and records transferred by the Debtors shall be protected by the attorney-client privilege. The Liquidating Debtor shall have the responsibility of storing and maintaining the books and records transferred under the Plan for the duration of the Liquidating Debtor, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. The Debtors shall cooperate with the Plan Agent to facilitate the delivery and storage of their books and records in accordance with this Plan. For purposes of this Article XI.N of the Plan, books and records include computer-generated or computer maintained books and records and computer data, as well as electronically-generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all the claims and rights of the Debtors in and to their books and records, wherever located.

U.     *Corporate Authorization*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, or managers of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the stockholders, directors, members, or managers of the Debtors. After the Effective Date, to the extent necessary, the Plan Agent shall have all authority, subject to the terms of this Plan, to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of one or more of the Debtors.

V.     *Effectuating Documents and Further Transactions*

Prior to the Effective Date, the Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Plan Agent shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions

37

as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

      W.    *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

# ARTICLE XII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      A.    *Treatment of Executory Contracts and Unexpired Leases*

As of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) are not otherwise being assumed in this Plan, (2) have not been previously rejected (including by operation of section 365(d)(4) of the Bankruptcy Code), assumed, or assumed and assigned, and (3) have not expired under their own terms prior to the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

      B.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.

      C.    *Rejection Damages Claim*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Plan Agent within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 2 General Unsecured Claim. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, the property of the Debtors, or the Liquidating Debtor, without the need for any objection by the Plan Agent or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity.**

D.     *Reservation of Rights*

Nothing contained in this Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Estate has any liability thereunder.

# ARTICLE XIII.
# PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1.     Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided herein, and only after the funding of the Reserves, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on a Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan. Notwithstanding any other provision of this Plan to the contrary, no Distribution shall be made on account of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Debtors' schedules of liabilities as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; (iii) is the subject of a pending and unresolved claim objection; or (iv) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

The Plan Agent shall make Distributions consistent with the requirements of this Plan. In connection with each Distribution to Holders of General Unsecured Claims, the Plan Agent shall withhold from property that would otherwise be distributed on account of Class 2 General Unsecured Claims entitled to Distributions, in the Disputed General Unsecured Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions (minus the Operating Reserve) to which Holders of Disputed General Unsecured Claims would be entitled under this Plan if such Disputed General Unsecured Claims were Allowed in their Disputed Claim Amount. The Plan Agent may request, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, and shall withhold the applicable portion of the Disputed General Unsecured Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.

2.     Entitlement to Distributions

On and after the Effective Date, the Plan Agent shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date and those Holders of Claims that Filed Proofs of Claims by the Claims Bar Date. Accordingly, the Plan Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices, and other documents only to those Holders of Allowed Claims who

are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

B.      *Plan Agent to make Distributions*

All Distributions under the Plan shall be made by the Plan Agent in accordance with this Plan. The Plan Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *No De Minimis Distributions Required*

No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00. Any interim Distribution less than $50.00 shall be held in trust for the relevant Holder until the Distribution to that Holder equals at least $50.00. If as of the date of the final Distribution the Plan Agent is holding funds for Distribution to certain Holders of Claims that are less than $50.00 for each such Holder, those funds shall be deemed unclaimed property and treated pursuant to Article XIII.E.2 of this Plan.

D.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Plan Agent, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

E.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Delivery of Distributions in General

Except as provided below, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or Plan Agent after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Plan Agent has not received a written notice of a change of address, or (d) at the addresses set forth in the other records of the Debtors or the Plan Agent at the time of the Distribution.

In making Distributions under this Plan, the Plan Agent may rely upon the accuracy of the claims register maintained by the Notice and Claims Agent in the Chapter 11 Cases, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

2.        Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Plan Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Plan Agent (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) and shall be distributed in accordance with the terms of this Plan, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

3.        Failure to Present Checks

Checks issued by the Plan Agent on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Plan Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and shall be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Debtors and their Estates, the Plan Agent, the Liquidating Debtor, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidating Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Plan Agent to attempt to locate any Holder of an Allowed Claim.

F.        *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Plan Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Plan Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Agent reserves the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. The Plan Agent shall have the authority to condition any Distribution upon the receipt of a completed IRS Form W-9 or applicable IRS Form W-8.

41

G.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors or the Plan Agent, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Plan Agent, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the Effective Date.

2.    Claims Payable by Third Parties

No Distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.    Applicability and Preservation of Insurance Policies

Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Retained Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

H.    *Claims Already Satisfied*

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors or any third party prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules shall be deemed amended and reduced to reflect that such payments were made. The Plan Agent is authorized, and without any further notice to or action, order or approval of the Bankruptcy Court, to direct the Notice and Claims Agent to update the official claims register maintained in the Chapter 11 Cases in accordance with any Claims satisfied or reduced pursuant to the Plan. Nothing in the Plan shall preclude the Plan Agent from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

I.     *Allocation of Plan Distributions between Principal and Interest*

Each Holder of an Allowed Claim shall have the option to apply such Holder's Pro Rata share of consideration distributed under the Plan (cash or value) to satisfy outstanding principal of or accrued interest on such Holder's Allowed Claim, as such allocation is determined by such Holder in its sole discretion.

J.     *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

## ARTICLE XIV.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.     *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), the Liquidating Debtor after Consummation will have and retain any and all rights, objections, and defenses the Debtors or their Estates had with respect to any Claim as of the Petition Date.

**Except as provided herein or otherwise agreed, any and all proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

B.     *Prosecution of Objections to Claims*

The Plan Agent shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. From and after the Effective Date and subject to Article XI.K of this Plan, the Plan Agent may settle or compromise any Disputed Claim. The Plan Agent may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

C.      *Deadline to Object to Claims*

Unless otherwise ordered by the Bankruptcy Court, the Plan Agent shall File all objections to Claims by no later than one year after the Effective Date, except to the extent that such Claims are Filed on or after the Effective Date, in which case, the Plan Agent shall have until the later of one year after the Effective Date or 90 days after such claim is Filed to File an objection to such claim. Notwithstanding the foregoing, if the Plan Agent determines that an extension of time is warranted, the Plan Agent may seek the Bankruptcy Court's approval to extend such time by a period of an additional 180 days, without prejudice to the Plan Agent's request to seek additional extensions from the Bankruptcy Court.

D.      *Estimation of Claims*

The Plan Agent may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Plan Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Agent may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

E.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Plan Agent, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

F.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, and subject to the administration of the Reserves and Liquidating Debtor in the Plan Agent's discretion, the Plan Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date.

## ARTICLE XV.
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE
## PLAN AND THE EFFECTIVE DATE

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that:

1.      All provisions, terms and conditions hereof are approved in the Confirmation Order.

2.      A Confirmation Order shall have been entered by the Bankruptcy Court, in form and substance acceptable to the Debtors.

3.      The Confirmation Order shall provide that, among other things, the Debtors and the Plan Agent, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing, and consummating the other contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.      All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

5.      All required consents, approvals, and authorizations, if any, have been obtained.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms, and conditions are satisfied (or waived pursuant to the provisions of Article XV.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.      The Debtors shall have fully funded (a) the Claims Reserve with all amounts that may be paid to Holders of Disputed and Allowed Administrative Claims, and Disputed and Allowed Tax Claims; and (b) the Professional Fee Account with all amounts contemplated to be paid to Holders of Professional Claims under the Plan.

2.      The Debtors shall have made all tax distributions to their respective members for any tax liability attributable to the Debtors for the tax year 2022.

3.      The Confirmation Order shall be a Final Order in form and substance acceptable to the Debtors, each in their sole discretion. The Confirmation Order shall provide that, among other things, the Debtors and the Plan Agent, as applicable, are authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, and other agreements or documents created in connection with or described in this Plan.

4.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.      *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article XV may be waived with the consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Nonoccurrence of Conditions*

If the Consummation of the Plan does not occur within six months from the date the Plan was Filed, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Estates, any Holders or any other Entity in any respect.

# ARTICLE XVI.
# SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan and except as otherwise provided herein, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Agent may compromise and settle Claims against the Debtors or their Estates and Causes of Action against other Entities.

B.      *Non-Discharge of Debtors; Injunction*

In accordance with section 1141(d)(3)(A) of the Bankruptcy Code, the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Person holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan. As of the Effective Date, all Persons are precluded and barred from asserting against any property to be distributed under the Plan any

Claims, rights, Causes of Action, liabilities, Interest or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or Confirmation Order.

      C.     *Releases by the Debtors*

**Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively, "*Debtor Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Sales, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing*; provided*, *however*, that the foregoing "*Debtor Releases*" shall not operate to waive, release or adversely impact (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of such Released Party's actual fraud, gross negligence, or willful misconduct, and (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan.**

      D.     *Releases by Holders of Claims*

**Notwithstanding anything contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and**

after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the other Released Parties from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively "*Third Party Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Sales, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any other Released Party, on one hand, and any Releasing Party, on the other hand, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the Plan or the Distributions and related documents or other property under the Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing; *provided*, *however*, that the foregoing "*Third Party Releases*" shall not operate to waive or release (i) any Causes of Action of any Debtor or Estate arising from any act or omission of a Released Party that are found, pursuant to a Final Order, to be the result of such Released Party's actual fraud, gross negligence, or willful misconduct, or (ii) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed in connection with the Plan; *provided, further*, that nothing contained in these provisions or in this Release shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots.

E.    *Exculpation*

Notwithstanding anything contained in this Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for (a) any prepetition act taken or omitted to be taken in connection with, related to or arising from the Debtors' out-of-court restructuring efforts, including authorizing, preparing for or Filing the Chapter 11 Cases and the Sales, or (b) any postpetition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan, the Disclosure Statement, or the Chapter 11 Cases, or any other postpetition act taken or omitted to be taken in connection with or in

contemplation of the restructuring of the Debtors, the Chapter 11 Cases, or the confirmation or consummation of this Plan, including but not limited to (i) the attempted sale of the Debtors' assets; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof if necessary), the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this Plan; or (iii) any Distribution made pursuant to this Plan, except for acts determined by a Final Order to constitute actual fraud, willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under or in connection with this Plan. Notwithstanding the foregoing, for the avoidance of doubt, this section of the Plan shall not (i) exculpate or release any Exculpated Party from anything other than as expressly identified in the preceding sentence, (ii) prevent or limit the ability of the Debtors, the Estates or the Plan Agent to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, or (iii) prevent or limit the ability of the Debtors, the Estates or the Plan Agent to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party.

F.    *Injunction*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations arising pursuant to the Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors, the Released Parties, the Exculpated Parties, the Liquidating Debtor and/or the Plan Agent: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to this Plan, which for the avoidance of doubt include the Third Party Releases, Debtor Releases and Exculpated Claims set forth herein; *provided, however*, that nothing contained in these provisions or in this Injunction shall affect the rights of Holders that elect the Release Opt-Out on their respective ballots, against any parties other than the Debtors, the Exculpated Parties, the Liquidating Debtor and/or the Plan Agent.

No enjoined party may commence or pursue a claim or cause of action of any kind against any Released Party based on the events prior to the Effective Date without the

**Bankruptcy Court first determining, after notice a hearing, that (i) such claim is not a derivative claim released pursuant to this Plan, and (ii) such claim or cause of action represents a colorable claim.  The Bankruptcy Court will have the sole and exclusive jurisdiction to determine whether a claim or cause of action is a direct, colorable claim that has not been released pursuant to this Plan and, only to the extent legally permissible, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.**

G.      *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

H.      *Setoffs*

Except as otherwise expressly provided for in the Plan, each Debtor, Estate and the Plan Agent (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Retained Cause of Action of any nature that such Debtor and/or its Estate, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Retained Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor, Estate or Plan Agent of any such Retained Causes of Action that such Debtor, Estate or Plan Agent may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Retained Cause of Action unless such Holder has obtained an authorizing order from the Bankruptcy Court pursuant to a motion Filed on or before the Confirmation Date with the Bankruptcy Court and requesting the authority to perform such setoff.

I.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Retained Cause of Action, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

# ARTICLE XVII.
## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS OR THEIR ESTATES TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH

HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XVIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, their Estates, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.       enter orders pursuant to 11 U.S.C. § 363 authorizing the sale of the Liquidating Debtors assets, if necessary to close a post-Effective Date sale of assets;

2.       allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

3.       decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

4.       resolve any matters related to: (a) rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom and (b) any dispute regarding whether a contract or lease is or was executory or expired;

5.       ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.       adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.       adjudicate, decide, or resolve any and all matters related to Retained Causes of Action;

8.       adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

9.       enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the administration of the Liquidating Debtor, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, administration, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article XVI and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article XIII.G.1;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or Disclosure Statement;

16.     enter an order or final decree concluding or closing the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

18.     consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     enforce all orders previously entered by the Bankruptcy Court;

23.     enforce the injunction provision of this Plan in Article XVI.F; and

24.     adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

## ARTICLE XIX.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modifications and Amendments*

Subject to the limitations contained herein, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their right to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. After the Effective Date any modifications to the Plan must be approved by an order of the Bankruptcy Court upon a motion by the Plan Agent.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan subject to the terms hereof, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (x) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor, Estate or any other Entity; (y) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, or any other Entity.

D.      *Substantial Consummation of the Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XX.
## MISCELLANEOUS PROVISIONS

A.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

B.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor, its Estate with respect to the Holders of Claims or Interests before the Effective Date.

C.      *Service of Documents*

Any pleading, notice, or other document required by this Plan to be served on or delivered to the Debtors shall be sent by electronic mail to drew@macco.group,

with copies to:

Porter Hedges LLP
1000 Main, 36th Floor
Houston, Texas 77002
Attn:      Aaron J. Power
Phone:   (713) 226-6000
Fax:       (713) 226-6628
Email:    apower@porterhedges.com

D.      *Nonseverability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Debtors; *provided*, *further*, that the Debtors may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of

the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified prior to the Effective Date without the Debtors' consent, or after the Effective Date without the Plan Agent's consent; and (3) nonseverable and mutually dependent.

E.     *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Entity at any time after the Petition Date shall be returned to the Plan Agent within twenty-one (21) days after the Effective Date, without deduction or offset of any kind.

F.     *Entire Agreement*

Except as otherwise indicated herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.     *Exhibits*

All exhibits hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H.     *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

I.     *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

[Remainder of Page Left Intentionally Blank]

Dated: June 16, 2023.

Respectfully submitted,

**MINERVA RESOURCES LLC**


By:  */s/ Drew McManigle*
      Drew McManigle
      Chief Restructuring Officer


**CRONUS MINERAL HOLDINGS, LLC**


By:  */s/ Drew McManigle*
      Drew McManigle
      Chief Restructuring Officer